**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TAIT TOWERS** | : | |
| **MANUFACTURING, LLC** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 24-1720** |
| | : | |
| **WICREATIONS, BVBA, et al.** | : | |
| | : | |

**MEMORANDUM OPINION**

**Henry, J.**                                                                                    **July 7, 2026**

Plaintiff, TAIT TOWERS MANUFACTURING, LLC ("TAIT"), sued Defendants, Wicreations, BVBA ("Wicreations") and Hans Willems, in connection with alleged patent infringement. Mr. Willems moves to dismiss the Third Amended Complaint as against him for lack of personal jurisdiction.

## I.    **BACKGROUND**[1]

Plaintiff obtained four patents (the "Patents-in-Suit") for a "proprietary staging system which uses interlocking decks to create a monolithic performing surface while minimizing setup-strike time and labor." *See* ECF No. 47 ("3d Am. Compl.") at ¶¶ 7-8. Plaintiff alleges that Wicreations and Mr. Willems, the CEO of Wicreations and a citizen of Belgium, developed a competing staging system (the "Infringing System"), elements of which infringe upon the Patents-in-Suit. *Id.* at ¶¶ 5, 9. Defendants market their staging system as WIDECK or WISTAGE and rent and sell the Infringing System and its components. *Id.* at ¶¶ 10-11. Defendants' system was used on tours in the United States, including Genesis's "The Last Domino?" Tour and Bad Bunny's

---

[1] The Court accepts the facts as set forth in the Complaint as true for the purposes of a motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

"Most Wanted" Tour, both of which included performances in Philadelphia, Pennsylvania in 2021 and 2024, respectively. *Id.* at ¶ 15. Plaintiff alleges that Defendants' staging system is only patented in Belgium, not in the United States. Nevertheless, WICREATIONS and Mr. Willems market the Infringing System in the United States as "patented" to United States consumers and for use in the United States. *Id.* at ¶ 23. Their promotional materials do not advise consumers that they do not own a U.S. patent on their system or that their Belgian patent is not enforceable outside of Belgium. *Id.* at ¶ 27. Plaintiff alleges that Defendants have infringed and are still infringing four of their patents directly and indirectly by making, using, selling, offering for sale, and/or importing into the United States the Infringing System. *Id.* at ¶¶ 36, 46, 56, 66. It alleges that Mr. Willems is personally liable for his own acts of infringement, even if those acts were committed in his capacity as CEO of WICREATIONS. *Id.* at ¶¶ 37, 47, 57, 67. Plaintiff brought suit in this Court on April 24, 2024. *See* ECF No. 1. The Complaint has been amended three times, the third version of which asserts causes of action for infringement of each of the Patent-in-Suit, false patent marking, and misleading advertising.

In addition to the alleged facts set forth in the Complaint, the parties rely upon Mr. Willems's deposition testimony, which the Court may consider for the purposes of a motion to dismiss for lack of personal jurisdiction. *See Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990). Mr. Willems testified that WICREATIONS is a Belgian company that was formed in December of 2005. *See* ECF No. 63-1 at 7:14-17. He has always been its CEO, and he was 100% owner of the company until 2018, when investment company Next Level gained 50% ownership of it. *Id.* at 8:19-9:2. WICREATIONS is now currently owned 50% by Mr. Willems and 50% by Next Level. *Id.* at 7:21-8:4. WICREATIONS' board of directors consists of two individuals—Mr. Willems and Geert Van der Stukken, who is a representative of Next Level. *Id.* at 9:6-20; 10:3-8.

Mr. Willems is WICREATIONS's only executive official. *Id.* at 10:19-21. The company has four departments—sales, engineering, warehouse, and marketing—the managers of which report to Mr. Willems. *Id.* 11:1-13. Mr. Willems is the head of the sales department, and three other individuals work in sales. *Id.* at 11:15-16; 12:1-3. Mr. Willems also used to be the head of the engineering department. *Id.* at 12:13-18.

Mr. Willems testified that he learned of one of the TAIT patents in 2021 or 2022 after a meeting with Adam Davis and Brian Levine of TAIT. *Id.* at 45:14-48:12. At that time, Mr. Willems did not consider TAIT a competitor. *Id.* at 53:2-4. When asked if he had done business in the United States before learning of the TAIT patents, Mr. Willems responded in the affirmative, noting that he considered himself as "doing business" in the United States because WICREATIONS is a European company, and they had European clients who might then take WICREATIONS products to the United States. *Id.* at 53:15-20; 54:2-5.

Mr. Willems applied for the Belgian patent on his staging system, which he invented, in November 2019. *Id.* at 68:1-9. He testified that his staging system had only been used in the United States twice—at the Genesis and Bad Bunny tours—and he had received only one other bid or proposal to use the staging system. ECF No. 69-1 at 100:10-17. Mr. Willems approved the decision to rent the staging system to the Genesis production company. ECF No. 63-1 at 121:18-25. He also made the decision to do business with the Bad Bunny production team. *Id.* at 122:16-18. In describing the process for renting out his staging system, Mr. Willems stated that the production company picks up the staging in Belgium and takes it to America. ECF No. 69-1 at 100:24-101:9. He knew that the production company would pick up the staging system and ship it to the United States. *Id.* at 101:13-17.

Mr. Willems never personally attended the productions in the United States that used his staging system. *Id.* at 112:7-113:13. He testified that there are marketing materials online and in

his office. *Id.* at 115:7-17. Although he attends industry events (which were not specified as being in the United States or not), he never had a booth or handed out marketing materials. *Id.* at 115:19-23.

## II.   DISCUSSION

Defendant Willems challenges Plaintiff's personal jurisdiction over him pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* ECF No.57 ("Mot."). When reviewing a motion to dismiss pursuant to Rule 12(b)(2) in patent cases, district courts apply the law of the Federal Circuit. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

### A.  Personal Jurisdiction in Pennsylvania[2]

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (internal citation omitted).

Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S. § 5322(b). Thus, because Pennsylvania's long-arm statute "is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Due process, pursuant to Federal Circuit law,

---

[2] Personal jurisdiction can be either general or specific. Willems contends that he is not subject to the Court's general jurisdiction because he is not domiciled in Pennsylvania, nor has he otherwise consented to jurisdiction in Pennsylvania. Mot. at 8. Plaintiff does not address general jurisdiction in its brief in opposition, but notes that, if the Court orders jurisdictional discovery, it may learn that he is subject to Pennsylvania's general jurisdiction. *See* ECF No. 62 ("Opp.") at 3 n.1. Because the parties do not make arguments as to general jurisdiction otherwise, I do not address it at this time and review only specific personal jurisdiction.

requires that "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics, Inc.*, 566 F.3d at 1018 (quoting *Breckenridge Pharm., Inc. v. Metabolite Lab'ys., Inc.,* 444 F.3d 1356, 1363 (Fed. Cir. 2006)).

Mr. Willems argues that Plaintiff "has made only the barest of allegations to assert that this Court has personal jurisdiction" over him, "relying solely on the fact that he is the CEO of WICREATIONS." Mot. at 9. He points out that Plaintiff does not allege that he committed any infringing activities in Pennsylvania, nor could it, because he is at most the CEO of a company that contracted in Belgium "to provide staging materials to production companies, which then took the staging materials to the United States." *Id.* at 10. Mr. Willems did not attend the concerts at issue in this case in Philadelphia or anywhere else in the United States. *Id*. Thus, he argues, because "a court generally lacks jurisdiction over an individual defendant whose only contacts with the forum state were taken in his or her corporate capacity,"—a maxim generally known as the corporate fiduciary shield doctrine—he did not have the requisite contacts with Pennsylvania for this Court to exercise personal jurisdiction over him. Mot. at 8, 11 (internal quotations omitted).

In opposition, Plaintiff argues that, accepting the allegations in the Complaint as true, it has sufficiently alleged that "Mr. Willems *personally* willfully and deliberately developed a staging system that infringed TAIT's Patents and then *personally* directed the Infringing System into Pennsylvania for use in at least three huge musical events." Opp. at 5-6 (emphasis in original). Plaintiff additionally relies on Mr. Willems's deposition testimony, in which he acknowledged that he was one of two members of WICREATIONS's board of directors, its sole corporate officer, its head of sales, its former head of engineering, its 50% owner, the Infringing System's inventor, that he directed a team of WICREATIONS personnel to accompany the Infringing System throughout the Bad Bunny tour, and that he personally made the decision to rent the infringing system to the

5

Genesis and Bad Bunny production teams for use in the United States and Pennsylvania. Opp. at 6-7. These facts, Plaintiff says, "only further establish Mr. Willems' contacts with Pennsylvania." Opp. at 6.

Plaintiff rebuts Mr. Willems's invocation of the corporate fiduciary shield doctrine, arguing that it is "hardly settled law." Opp. at 8. And even if the Court were to analyze the fiduciary shield doctrine, Plaintiff submits, there is an exception to the doctrine when the corporate agent commits a tort. *Id.* at 9. Because of Mr. Willems's dominant role within WICREATIONS, Plaintiff argues that he can be held personally liable for any tortious conduct committed while in his capacity as a corporate officer of WICREATIONS. Opp. at 9-10.

In reply, Mr. Willems argues that all of the evidence Plaintiff relies on were actions taken in his capacity as CEO of WICREATIONS, in Belgium, and the Company was the operative party, not Mr. Willems himself, so he would be protected by the corporate fiduciary shield. *See* ECF No. 68 ("Reply") at 4. He reiterates that he was not present in the United States for the Bad Bunny or Genesis tour, only other WICREATIONS employees. *Id.*

I will begin analysis of personal jurisdiction in Pennsylvania with whether Mr. Willems is protected by the corporate fiduciary shield doctrine. I hold that it does not apply in this case. Mr. Willems relies primarily on *Grober v. Mako Prods., Inc.*, 686 F.3d 1335 (Fed. Cir. 2012), for the proposition that "[t]he fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state." *See* Reply at 2-3; *Grober*, 686 F.3d at 1347. However, Mr. Willems does not address more recent caselaw that holds that corporate officers may still be held liable for their own tortious actions. *See, e.g.*, *Glob. Traffic Techs. LLC v. Morgan*, 620 Fed. App'x. 895, 908 n.6 (Fed. Cir. 2015) (recognizing the "traditional rule" that "a person is personally liable for his own tortious actions, even if committed as a corporate officer"); *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1359 (Fed. Cir. 2021)

6

("The fact that Mr. Chung may have acted on behalf of his corporation does not excuse him from individual liability.").[3]

In *Glob. Traffic Techs. LLC*, the Federal Circuit clarified that, even accepting the doctrine of piercing the corporate veil, which requires a showing that a company is an officer's alter ego, it still maintained the rule that corporate officers may still be held personally liable for tortious actions:

> In *Wordtech*, this court stated that "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' alter ego." . . . We do not believe this statement represents a departure from the traditional rule that a person is personally liable for his own tortious actions, even if committed as a corporate officer. . . . Instead, we interpret *Wordtech* as reinforcing the rule that a corporate officer—or perhaps only a corporate owner . . . –cannot be found derivatively liable for *the corporation's infringement* without piercing the corporate veil.

*See Glob. Traffic Techs. LLC*. 620 Fed. App'x at 908 n.6 (emphasis in original).

Thus, as again reiterated in *Lubby*, "[c]orporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity." *Lubby*, 11 F. 4th at 1358. Because Plaintiff alleges tortious activity by Mr. Willems, I hold that he is not protected by the corporate fiduciary shield.

The analysis does not end there—the Court must still analyze whether Mr. Willems's contacts with Pennsylvania are sufficient to comport with due process. I hold that they are not. Even though Mr. Willems is not protected by the corporate fiduciary shield, Plaintiff has not otherwise alleged any conduct on his behalf that is separate and apart from the conduct of

---

[3] In *Grober*, the Federal Circuit appeared to be discussing concurrently the corporate fiduciary shield doctrine and the doctrine of corporate veil piercing, which are two distinct doctrines and are not clearly distinguished in its opinion or in the opinion of the Court below. *See Grober*, 686 F.3d 1347 ("The fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state. . . . In support of this, the district court cited *Nelson v. Adams USA Inc.*, 529 U.S. 460, 470-71, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000), for the premise that 'the court should not lightly disregard the corporate form; a corporation's veil may not be pierced merely because it has only one owner.'"); *Grober v. Mako Prods., Inc.*, No. 04-cv-8604, 2008 WL 9027249 (C.D. Cal. Aug. 29, 2008) (order granting in part motion to dismiss for lack of personal jurisdiction).

WICREATIONS so as to hold Mr. Willems personally liable for his own acts of infringement. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.").

Throughout the Complaint, Plaintiff repeatedly alleges that "Mr. Willems is personally liable for his own acts of infringement, even if those acts were committed in his capacity as WICREATIONS' CEO." 3d Am. Compl. at ¶¶ 37, 47, 57, 67. This is not enough to support a finding of personal jurisdiction in the Commonwealth of Pennsylvania. Although Plaintiff has alleged that WICREATIONS' purportedly infringing systems were present in Pennsylvania, it has made no allegations to sufficiently connect Mr. Willems *himself*—as opposed to WICREATIONS—to Pennsylvania. There are no allegations or evidence that Mr. Willems personally marketed the invention in Pennsylvania or otherwise sold or rented the invention in Pennsylvania. Rather, with regards to contacts with Pennsylvania, the evidence shows at best that he approved the decision to rent the staging system to production companies that would be taking the staging systems on concert tours in the United States. This simply is not enough to say that Mr. Willems "purposefully directed [his] activities at residents of [Pennsylvania]." *Autogenomics, Inc.*, 566 F.3d at 1018; *see also Tube-Mac Indus., Inc. v. Campbell*, No. 19-cv-1192, 2020 WL 1911464, at *5 (W.D. Pa. Apr. 20, 2020) (holding that the court did not have personal jurisdiction over a foreign patentee where the plaintiffs had not set forth facts or evidence to establish activities directed toward Pennsylvania residents, such as invention of the system at issue occurring in Pennsylvania or marketing of the system or enforcement of the patent in Pennsylvania).

### B. Rule 4(k)(2)

Plaintiff argues in the alternative that, to the extent Mr. Willems is not subject to personal jurisdiction through sufficient minimum contacts with Pennsylvania, he is subject to personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides that "[f]or

a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The Federal Circuit thus "read[s] Rule 4(k)(2) to allow a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009).

There is no dispute that Plaintiff's claim here for patent infringement arises under federal law. As for the requirement that the defendant is not subject to jurisdiction in any state, the Federal Circuit has reasoned that, rather than burdening a plaintiff with "proving a negative many times over," the burden shifts to the defendant to identify a different forum in which he or she could be sued. *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009). "[I]f the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.* at 1415. Here, Mr. Willems has not identified a different forum in which this case could have been brought, so the second requirement is satisfied.

As for the third prong—whether the exercise of jurisdiction comports with due process— the Court "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes (U.S.A.)*, 563 F.3d at 1295. In this case, the Court is confronted by the same deficiency in pleading discussed above. However, Plaintiff has presented some evidence that Mr. Willems may have played a more significant and personal role in directing the purportedly infringing staging systems into the United States. For example, at his deposition,

9

Mr. Willems testified that he approved the decision for the staging systems to be rented to the company that in turn brought them to the United States. This evidence, although not conclusive, indicates that there may be sufficient contacts between Mr. Willems and the United States, requiring jurisdictional discovery.

In patent cases, the law of the regional circuit dictates whether jurisdictional discovery is appropriate. *See Univ. of Massachusetts v. L'Oreal, S.A.*, 36 F.4th 1374, 1384 (Fed. Cir. 2022) (citing *Autogenomics*, 566 F.3d at 1021-22). Third Circuit law provides that "[i]f the plaintiff presents factual allegations that suggest with reasonable particularity the *possible* existence of the requisite contacts . . . , the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). More development is needed to establish the requisite minimum contacts, but because "this evidence raises the *possibility* that discovery might . . . uncover[] the requisite contacts," I must allow jurisdictional discovery. *See id.* at 1385.

## III.  **CONCLUSION**

For the reasons discussed more fully above, Mr. Willems's Motion to Dismiss for Lack of Personal Jurisdiction is denied without prejudice, subject to his right to renew the Motion following jurisdictional discovery. An appropriate Order follows.